IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 139, et al.,

      Plaintiffs,

    v.                        Case No. 19-CV-1233

JAMES J. DALEY,

      Defendant.

---

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

---

## INTRODUCTION

The Seventh Circuit has twice found 2011 Wisconsin Act 10 constitutional under the First and Fourteenth Amendments. In this case, the International Union of Operating Engineers, Local 139, and two of its members seek to bring another challenge. However, binding Seventh Circuit precedent requires dismissal of the suit, and a 2018 Supreme Court decision does not undermine that precedent. The Court should dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

Plaintiffs acknowledge their challenge to Act 10's payroll-deduction prohibition is foreclosed by precedent. (Dkt. 1:8 ¶ 35.) And despite their assertions to the contrary, *Janus v. American Federation of State, County, &*

*Municipal Employees, Council 31*, 585 U.S. ___, 138 S. Ct. 2448 (2018), is not on point. On the contrary, *Janus* held unconstitutional mandatory public-sector-union "agency fees" paid by non-consenting employees under the First Amendment. That topic is unrelated to Plaintiffs' Count III payroll-deduction claim, and *Janus* did not overrule the Supreme Court and Seventh Circuit precedent that requires dismissal.

Counts I and II fare no better. They should also be dismissed for failure to state a claim upon which relief can be granted.

Regarding Count II, which addresses Act 10's public-employer limitation on collective bargaining only as to base wages, *Janus* again has no relevance. And the Seventh Circuit has already determined this aspect of Act 10 does not violate the First or Fourteenth Amendments in *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 630 (7th Cir. 2014).

Finally, Count I challenges Act 10's requirement that a collective bargaining representative must receive at least 51% of the votes of all general employees in the collective bargaining unit. *Janus* is again unhelpful to Plaintiffs' First Amendment claim. The case involved the topic of compelled speech, but the speech-subsidy context in *Janus* is unrelated to Plaintiffs' claim that Act 10 forces them to speak when they would prefer to remain silent. Here, there is no compelled speech in the first instance, as public employees are free to vote or abstain under Act 10. And the annual certification requirement has

already been upheld by the Seventh Circuit in *Wisconsin Education Ass'n Council v. Walker*, 705 F.3d 640, 656–57 (7th Cir. 2013).

Because binding Seventh Circuit precedent forecloses all three of Plaintiffs' claims, and the Supreme Court's decision in *Janus* does nothing to set those aside, the Court should dismiss Plaintiffs' entire complaint under Rule 12(b)(6).

## BACKGROUND

### I.    Overview of Act 10 and legal challenges to it

This case seeks declaratory and injunctive relief as to certain provisions of 2011 Wisconsin Act 10. "Act 10 made significant changes to Wisconsin public-sector labor law." *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 630 (7th Cir. 2014). The law "prohibited government employers from collectively bargaining with their general employees over anything except base wages, made it more challenging for general-employee unions to obtain certification as exclusive bargaining agents, and precluded general-employee unions from using automatic payroll deductions and fair-share agreements." *Id.*

Act 10 has been challenged several times, but no challenge has succeeded. The Seventh Circuit has held that "Act 10 does not violate the First or Fourteenth Amendments to the United States Constitution." *Laborers Local 236*, 749 F.3d at 640.

In *Wisconsin Education Ass'n Council*, 705 F.3d 640 ("*WEAC*"), the first federal-court challenge to Act 10, the Seventh Circuit held that "Act 10's payroll deduction prohibitions do not violate the First Amendment." *Id.* at 645. The court also upheld the payroll-deduction prohibitions in the face of a Fourteenth Amendment equal protection challenge, concluding that "the payroll dues prohibition survives rational basis review." *Id.* at 657. And the court upheld Act 10's limitations on the statutory subjects of collective bargaining and its annual certification requirements under the Equal Protection Clause, too. *Id.* at 654–57.

In the second federal-court challenge to Act 10, *Laborers Local 236*, the plaintiffs first challenged Act 10's collective-bargaining requirements under the First Amendment's Petition Clause. 749 F.3d at 634. Second, they alleged that Act 10's various restrictions, in their cumulative effect, violated their First Amendment association rights. *Id.* Third, they challenged Act 10's collective-bargaining requirements under the Fourteenth Amendment's Equal Protection Clause, arguing that differential treatment between represented employees and individual employees who do not join a union is unconstitutional. *Id.* at 639. The Seventh Circuit rejected each of these challenges. *Id.* at 630, 638–41.

In addition, the Wisconsin Supreme Court upheld Act 10 in *Madison Teachers, Inc. v. Walker*, 2014 WI 99, 358 Wis. 2d 1, 851 N.W.2d 337. The

plaintiffs argued, "that four aspects of Act 10—the collective bargaining limitations, the prohibition of fair share agreements, the prohibition on payroll deductions of labor organization dues, and the annual certification requirements—violate the constitutional associational and equal protection rights of the employees they represent." *Id.* ¶ 2. The court rejected each challenge, concluding that "[n]o matter the limitations or 'burdens' a legislative enactment places on the collective bargaining process, collective bargaining remains a creation of legislative grace and not constitutional obligation." *Id.* ¶ 160.

## II.    Plaintiffs' complaint

### A.    The parties

Plaintiff International Union of Operating Engineers, Local 139, ("Operating Engineers") is a labor union "representing approximately 9,500 workers. (Dkt. 1:2 ¶ 3.) Its headquarters is in Pewaukee, and it has additional offices in Madison, Altoona, and Appleton. (Dkt. 1:2 ¶ 3.) Since 1902, Operating Engineers has represented thousands of workers, including those who are employed by public employers, such as cities, counties, and towns, who perform construction, maintenance, and repair work. (Dkt. 1:2 ¶ 4.)

Plaintiffs Karen Erickson and Heath Hanrahan are members of Operating Engineers employed by Marinette County "in a bargaining unit previously represented by" Operating Engineers. (Dkt. 1:2 ¶ 5.)

Defendant James J. Daley is the Chair of the Wisconsin Employment Relations Commission (WERC), "which is responsible for conducting elections and, enforcing and resolving disputes arising under Wisconsin Statutes §111.70., *et seq.*, including the changes pursuant to Wisconsin's Act 10." (Dkt. 1:2 ¶ 6.) He is sued in his official capacity. (Dkt. 1:2 ¶ 6.)

## B.    Plaintiffs' claims and the relief requested

Plaintiffs assert three claims—two under both the First and Fourteenth Amendments (Counts II and III) and one under only the First Amendment (Count I). Their lawsuit alleges that it is "for the Court to evaluate Act 10, in light of the decision in *Janus*, and as such raises arguments not previously ruled upon by" this Court or the Seventh Circuit as to Act 10. (Dkt. 1:4 ¶ 12.)

Count I asserts a claim under the First Amendment relating to "Compelled Speech." (Dkt. 1:5, 6 ¶ 22.a.) Plaintiffs allege that "[i]n the provision of Act 10 requiring annual recertification elections, it declares that a non-vote is a vote against Union representation Wis. Stat. § 111.70(4)(d)3b." (Dkt. 1:5 ¶ 19.) "By equating not voting with voting no, Act 10 directly infringes on the rights of public employees to not engage in speech." (Dkt. 1:5 ¶ 20.) Operating Engineers and the individual Plaintiffs have allegedly "been directly harmed by this provision of Act 10 in recertification elections" when, in an election certified in April 2019, Operating Engineers received "100% of all ballots cast, but because Act 10 equates not voting with a 'no' vote, it was not

6

recertified as the bargaining unit representative for such employees." (Dkt. 1:5 ¶ 21.) This result allegedly "violate[d] the First Amendment rights of public employee non-voters to remain silent in the re-certification process." (Dkt. 1:5 ¶ 22.)

Count II asserts a claim under the First and Fourteenth Amendments relating to "Restrictions on Non-Collectively Bargained Agreements". (Dkt. 1:6, 7 ¶ 29.b.) Plaintiffs allege that "Act 10 has been interpreted and applied by the WERC to preclude any agreements between Unions and municipalities over any issues besides wages, even if not 'collectively bargained.'" (Dkt. 1:6 ¶ 24.) Plaintiffs provide some examples: (1) a municipal employer sought Operating Engineers' assistance in training its workforce through the use of a training and apprenticeship center the union has; (2) a municipal employer wanted to obtain access to skilled temporary workers with Operating Engineers' assistance; and (3) a municipal employer sought Operating Engineers' assistance with health-benefit coverage for its workforce. (Dkt. 1:6–7 ¶¶ 25–27.) Under Act 10, "as interpreted by the WERC, the parties were precluded from entering into agreement to address such issues, despite the expectation that said terms would be voluntarily adopted by the municipality, outside of collective bargaining." (Dkt. 1:7 ¶ 28.) This "imposes an arbitrary restriction [sic] Unions' ability to negotiate and/or contract with municipal employers on matters of significant public concern, outside of the

collective bargaining context, in violation of the First Amendment and/or Fourteenth Amendment." (Dkt. 1:7 ¶ 29.)

Finally, Count III asserts a claim under the First and Fourteenth Amendments relating to an alleged "<u>Prohibition on Disfavored Speech</u>". (Dkt. 1:8, 8 ¶ 35.a.) Wisconsin Stat. § 111.70(3g) allegedly "infringes on the First Amendment rights of public employees" and is a "content based restriction on public employees' First Amendment rights." (Dkt. 1:8 ¶¶ 31, 32.) Plaintiffs also assert that Wis. Stat. § 111.70(3g) violates their "equal protection rights under the First Amendment." (Dkt. 1:8 ¶ 34.) Plaintiffs acknowledge that their Count III claim fails. (*See* Dkt. 1:8 ¶ 35.) The Seventh Circuit has "upheld the payroll dues deduction prohibition pursuant to Act 10." (Dkt. 1:8 ¶ 35.) Nonetheless, Plaintiffs "assert in good faith that in light of the Supreme Court's decision in *Janus*, such prior determinations should be re-visited." (Dkt. 1:8 ¶ 35.)

For each of their claims, Plaintiffs request (1) a declaration that the challenged portion of Act 10 is unconstitutional and unlawful as applied, (Dkt. 1:6, 7, 8 ¶¶ 22.a., 29.a., 35.a.); and (2) an order enjoining Defendant from enforcing the challenged provision. (Dkt. 1:6, 7–8, 8–9 ¶¶ 22.b, 29.b., 35.b.) They also request attorney fees, costs, and further relief the Court deems proper. (Dkt. 1:6, 8, 9 ¶¶ 22.c., d., 29.c., d., 35.c., d.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defense of "failure to state a claim upon which relief can be granted" may be asserted by motion. When evaluating the sufficiency of a complaint under Rule 12(b)(6), a court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). "Legal conclusions [in a complaint] do not get the same benefit; those [a court] may disregard." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). "Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citation omitted).

## ARGUMENT

"Act 10 does not violate the First or Fourteenth Amendments to the United States Constitution." *Laborers Local 236*, 749 F.3d at 640. That holding is binding, meaning Plaintiffs fail to state a claim upon which relief can be granted. *See Enger*, 812 F.3d at 568. The subsequently decided *Janus* does not change that. (*See* Dkt. 1:4 ¶ 12.) Thus, the Court should dismiss the Complaint in its entirety.

In *Janus*, the Supreme Court considered whether requiring nonconsenting, nonmembers of public-sector unions to pay an "agency fee"—a percentage of full union dues, sometimes called a "fair share" fee in previous Act 10 litigation—violates the First Amendment. 138 S. Ct. at 2460. Nonmembers had to pay the fee even if they "strongly object to the positions the union takes in collective bargaining and related activities." *Id.* The Court concluded, "this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.*

In so holding, the Court overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). *Id.* Under *Abood*, nonmembers of a public-sector union could be "charged for the portion of union dues attributable to activities that are 'germane to [the union's] duties as collective-bargaining representative,' but nonmembers may not be required to fund the union's political and ideological projects." *Id.* at 2460–61 (alteration in original) (quoting *Abood*, 431 U.S. at 235). The Court explained that *Abood* was "inconsistent with other First Amendment cases" and that it "has been undermined by more recent decisions." *Id.* at 2460.

None of the First or Fourteenth Amendment claims Plaintiffs raise are saved by *Janus*. Instead, Counts I through III should be dismissed for failure to state a claim.

## I.   Act 10's payroll-deduction prohibition is constitutional; therefore, Count III should be dismissed.

Plaintiffs challenge Act 10's payroll-deduction prohibition in Wis. Stat. § 111.70(3g), which states: "A municipal employer may not deduct labor organization dues from the earnings of a general municipal employee or supervisor." In their Complaint, Plaintiffs "acknowledge that both the District Court and the United States Court of Appeals for the Seventh Circuit have upheld the payroll dues deduction prohibition pursuant to Act 10." (Dkt. 1:8 ¶ 35.) Plaintiffs' concession is warranted. The Seventh Circuit addressed the same First and Fourteenth Amendment theories Plaintiffs raise now to challenge Act 10's payroll-deduction prohibition, and it rejected them. *WEAC*, 705 F.3d at 645–54, 657; *see also Laborers Local 236*, 749 F.3d at 639–40. Because this Court is bound by *WEAC* and *Laborers Local 236*, Act 10's payroll-deduction prohibition is therefore constitutional. Accordingly, Count III should be dismissed. *See Enger*, 812 F.3d at 568.

Plaintiffs' attempt to use *Janus* fails because it is not on point. In *Janus*, the Supreme Court addressed whether nonmembers of a union can be required to subsidize the union's private speech on matters of public concern by paying a reduced portion of union dues. 138 S. Ct. at 2460. The Court held that such agency-fee requirements violate the First Amendment. *Id. Janus*'s holding about the constitutionality of agency fees and whether they amount to

compelled speech has nothing to do with Wisconsin's prohibition on municipal employers using their payroll systems to deduct union dues and fair-share fees that Plaintiffs are challenging in Count III.

*Janus* did not alter First Amendment jurisprudence such that Plaintiffs can now pursue their Count III claim. Specifically, *Janus* did not overrule the still-binding Supreme Court precedent the Seventh Circuit applied to uphold Act 10's payroll-deduction prohibition.

In *WEAC*, the court applied *Ysursa v. Pocatello Education Ass'n*, 555 U.S. 353 (2009), to reject a First Amendment challenge to Act 10's payroll-deduction prohibition. *See* 705 F.3d at 645–48, 653, 657. The Seventh Circuit held that rational-basis review applies to the prohibition "because the Supreme Court has settled the question: use of the state's payroll systems to collect union dues is a state subsidy of speech that requires only viewpoint neutrality." *Id.* at 645 (citing *Ysursa*, 555 U.S. at 358–59). Furthermore, "the State's decision not to [allow payroll deduction of union dues] is not an abridgment of the unions' speech; they are free to engage in such speech as they see fit." *Id.* at 645–46 (alteration in original) (quoting *Ysursa*, 555 U.S. at 359).

*Janus* did not mention *Ysursa*, let alone overrule it. It is incorrect to assert that *Janus* changed the First Amendment landscape to such an extent that Plaintiffs may now pursue their Count III claim. *Ysursa* still stands in the way of Plaintiffs' claim, and neither this Court nor the Seventh Circuit can

overrule it. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

The Court should dismiss Plaintiffs' Count III pursuant to Rule 12(b)(6).

## II. Act 10's limitation on public-sector collective bargaining is constitutional; therefore, Count II should be dismissed.

Plaintiffs' Count II is difficult to understand because the statute cited does not quite fit the claim. Whatever they have in mind, it would run into the precedent. Plaintiffs allege WERC has interpreted Wis. Stat. § 111.70, *et seq.*, as prohibiting municipal employers from reaching binding agreements with their general employees on a collective basis on any issue except base wages. However, what Plaintiffs describe is just what the Seventh Circuit already held is lawful. Plaintiffs further suggest that they are discussing "non-collectively bargained agreements," as if that matters legally, but that label makes no difference because what they describe—"agreements" between Local 139 and employers (Dkt. 1:6 ¶ 28)—is covered by the precedent. (Dkt. 1:2, 4, 5, 6–8 ¶¶ 6, 13, 17, 23–29a.–d.) Whatever the label, this claim is foreclosed.

### A. *Laborer's Local 236.*

The Seventh Circuit's decision in *Laborers Local 236* controls the outcome of Plaintiffs' Count II—in Defendant Daley's favor.

In *Laborers Local 236*, two plaintiff unions claimed that a provision of Act 10—Wis. Stat. § 66.0508(1m)[1]—violated the First and Fourteenth Amendments. 749 F.3d at 632–33. They argued that (1m)—which states that "[e]xcept as provided under subch. IV of ch. 111, no local governmental unit may collectively bargain with its employees"—prohibits municipal employers from collectively bargaining with their general employees about anything other than base wages, even if they want to bargain outside of the framework of subchapter IV of chapter 111. *Id.* at 633. This is the same argument Plaintiffs seem to make here.

In *Laborers Local* 236, before deciding the plaintiffs' constitutional claims, the Seventh Circuit was forced to interpret Wis. Stat. § 66.0508(1m) because no state court had done so.[2] Upon consideration of the parties' arguments, the court agreed with the plaintiffs' interpretation that Wis. Stat. § 66.0508(1m) should be read broadly to prohibit "municipal employers from reaching binding agreements with their general employees on a collective basis, *if the agreement concerns anything other than the employees' base wages*." *Id.* at 634 (emphasis added). Put another way, Act 10 "tells [government]

---

[1] Wisconsin Stat. § 66.0508 was created by Act 10 and cross-references Wis. Stat. § 111.70. *See* 2011 Wis. Act 10 § 169.

[2] Defendant Daley is not aware of any state-court decisions addressing Wis. Stat. § 66.0508(1m) since that time.

employers that they may not enter into binding agreements with their employees on a collective basis about anything other than base wages." *Id.* at 635.

With that understanding of Act 10, the *Laborers Local 236* court then rejected the plaintiffs' First Amendment Petition Clause and Fourteenth Amendment Equal Protection Clause challenges to Wis. Stat. § 66.0508(1m). *Id.* at 634–38, 639–40. As to the Petition Clause challenge, the court explained that Act 10's "collective-bargaining restriction acts upon government employers." *Id.* at 634. "[G]eneral employees remain free to associate and represented employees and their unions remain free to speak; municipal employers are simply not allowed to listen." *Id.* at 635 (citation omitted). *See also WEAC*, 705 F.3d at 646 ("Act 10 places no limitations on the speech of general employee unions, which may continue speaking on any topic or subject."). In short, the Seventh Circuit rejected the claim that Act 10's restrictions on collective bargaining violated the First Amendment and based that holding on the Supreme Court precedent. *See Laborers Local 236,* 749 F.3d at 635–38 (applying *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463 (1979), and *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271 (1984)).

After disposing of the plaintiffs' First Amendment challenge in *Laborers Local 236*, the Seventh Circuit next addressed their Fourteenth Amendment equal protection claim. The court first rejected their argument that

fundamental First Amendment rights were implicated, holding that "Act 10 does not mandate any form of unfavorable treatment for union members." *Id.* at 640. "Wisconsin has chosen to recognize individual employees as appropriate bargaining partners for municipal employers, but not union representatives. That is Wisconsin's choice to make." *Id.* The court continued, "The association right does not compel public employers to sit down at the table with whomever an employee may wish to represent them." *Id.* Thus, the court held that, because there were no First Amendment implications, the distinction between represented and non-represented employees was examined under a rational-basis standard of review. *Id.* It also held that the State had a legitimate government interest in the limitations on the scope of collective bargaining, which the court identified as "promot[ing] flexibility in state and local government budgets by providing public employers more leverage in negotiations." *Id.* (alteration in original) (quoting *WEAC*, 705 F.3d at 654). Given the "highly deferential standard," the court held that this state interest passed constitutional muster under equal protection, as the plaintiff unions conceded. *Id.*

### B.    Plaintiffs' Count II First Amendment claim fails.

Plaintiffs contend that they are prevented from entering into agreements with municipal employers over subjects outside of base wages: a training center and apprenticeship program; access to a skilled, temporary workforce;

and assistance with health-benefit coverage for a workforce. (Dkt. 1:6–7 ¶¶ 24–28.) This is the same constitutional claim the plaintiffs made in *Laborer's Local 236*. The Seventh Circuit held that Act 10 does not restrict an employee's First Amendment rights; it only bars municipal employers from listening to and engaging with employees' speech. *See*, *e.g.*, Wis. Stat. § 111.70(4)(mb). ("*The municipal employer is prohibited* from bargaining collectively with a collective bargaining unit containing a general municipal employee with respect to . . . [a]ny factor or condition of employment except wages, which includes only total base wages and excludes any other compensation."). In the examples Plaintiffs cite (Dkt. 1:6–7 ¶¶ 25–27), the employees are speaking without restriction, and the municipal employers are the ones restricted. Thus, Defendant Daley's alleged interpretation and application of Act 10 here does not violate the First Amendment because the Seventh Circuit has already found such interpretation and application constitutional.

And *Janus* does not alter the First Amendment analysis. In that decision, the Supreme Court held the government cannot force nonconsenting public employees to pay agency fees to unions, as such an arrangement compels employees to subsidize union speech they find objectionable. *See Janus*, 138 S. Ct. at 2486. Put another way, the Court ruled on the rights of non-union members to be free from compelled speech, not the rights of unions or union

members to compel a government employer to listen and engage in speech through bargaining.

Plaintiffs' Complaint cites the following passage from *Janus*: "Unions can also speak out in collective bargaining on controversial subjects such as climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions. These are sensitive political topics, and they are undoubtedly matters of profound 'value and concern to the public.'" *Janus*, 138 S. Ct. at 2476 (citation omitted); (Dkt. 1:3–4 ¶ 11.) Plaintiffs appear to assert this language from *Janus* gives them a First Amendment right to enter into agreements with a municipal employer on any subject. But, as explained above, *Janus* did not so hold. And Act 10 does not bar unions or their members from *speaking* on the matters addressed in *Janus*.

Plaintiffs' First Amendment challenge to Act 10 in Count II fails.

## C. Plaintiffs' Count II equal protection claim would fail.

Plaintiffs also cite the Fourteenth Amendment in their Count II. (Dkt. 1:7 ¶¶ 29, 29a.) It is unclear if they mean to allege an equal protection claim. To the extent they do, it would fail for reasons similar to those already discussed.

Here, for equal protection purposes, Plaintiffs appear to compare themselves to any other entity outside of collective bargaining that seeks to contract with a municipality for goods and services upon the same terms.

(Dkt. 1:7–8 ¶ 29.b.) Because Plaintiffs are not part of a suspect class and, as explained directly above, no fundamental First Amendment rights are implicated, their equal protection claim is subject to rational basis review. *Heller v. Doe*, 509 U.S. 312, 320–21 (1993).

Under rational basis, there is a presumption of constitutionality, and the court will uphold the law "'if there is any reasonably conceivable state of facts' supporting the classification." *WEAC*, 705 F.3d at 653 (quoting *Heller*, 509 U.S. at 320). "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' Nor does it authorize the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Heller*, 509 U.S. at 319 (alteration in original) (citation omitted).

Wisconsin's same governmental interest accepted in *Laborers Local 236* and *WEAC* would apply equally here: "promot[ing] flexibility in state and local government budgets by providing public employers more leverage in negotiations." *WEAC*, 705 F.3d at 654. And given that the Seventh Circuit found the challenged classifications to be rational, that reasoning binds the Court here.

It is conceivably rational for the State to limit representatives of employees in a collective-bargaining unit to bargain collectively with a

municipality only over the subject of base wages and nothing else, as compared to any other entity that wishes to bargain over goods and services. This restriction grants the municipality much more leverage in its collective bargaining over base wages with the exclusive bargaining-unit representative, thereby providing cost savings to the municipality. To allow the exclusive collective-bargaining representative to bargain with a municipality over any other subject—such as the subjects Plaintiffs reference—would give that exclusive representative more leverage in negotiations over a collective-bargaining agreement. That was a policy decision vested with the Legislature to limit a party's leverage in negotiations for goods and services. Accordingly, the classification challenged here passes constitutional equal protection muster. *See WEAC*, 705 F.3d at 654; *Laborers Local 236*, 749 F.3d at 640.

Plaintiffs' equal protection claim under Count II fails and should be dismissed.

***

In summary, Plaintiffs fail to state any claims upon which relief can be granted in Count II because they are barred by controlling case law that *Janus*

did not disturb. Count II should be dismissed under Rule 12(b)(6).[3] *See Enger*, 812 F.3d at 568.

## III. Act 10's annual certification procedure is constitutional; therefore, Count I should be dismissed.

Finally, Count I also fails. Act 10's annual-certification procedure, codified in Wis. Stat. § 111.70(4)(d)3.b., is constitutional. Therefore, Count I should be dismissed. *See Enger*, 812 F.3d at 568.

Like Plaintiffs' other counts, Seventh Circuit precedent likewise forecloses Count I. As discussed above, plaintiffs in *Laborers Local 236* were wholly unsuccessful in their challenge to the cumulative provisions of Act 10, including the annual-certification requirement, under the First and Fourteenth Amendments. *Laborers Local 236*, 749 F.3d at 638, 640. And several other plaintiffs failed in their earlier equal protection challenge to the annual-certification provision of Act 10. *See WEAC*, 705 F.3d at 656–57.

Notwithstanding this binding authority, Plaintiffs allege that Wis. Stat. § 111.70(4)(d)3.b.—by setting a 51-percent-majority requirement of the entire

---

[3] Another way to reach the same result is viewing the Seventh Circuit's discussion of Act 10's cumulative changes to the collective-bargaining process— including the restriction on the subject of collective bargaining to base wages. *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 638–40 (7th Cir. 2014). In that context, the court held that "Act 10 does not violate the First or Fourteenth Amendments to the United States Constitution." *Id.* at 640. If the cumulative changes Act 10 made to Wisconsin's municipal collective-bargaining laws were constitutional, then one provision standing alone—here, the limitation on base wages being the sole subject of collective bargaining—must also be constitutional.

bargaining unit for annual certification elections—"infringes on the right of public employees to not engage in speech." (Dkt. 1:5 ¶ 20.) It does so by "declar[ing] that a non-vote is a vote against Union representation." (Dkt. 1:5 ¶ 19.) But the statute does no such thing.

The relevant statute, Wis. Stat. § 111.70(4)(d)3.b., states:

> Annually, the commission shall conduct an election to certify the representative of the collective bargaining unit that contains a general municipal employee. . . . The commission shall certify any representative that receives at least 51 percent of the votes of all of the general municipal employees in the collective bargaining unit. If no representative receives at least 51 percent of the votes of all of the general municipal employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general municipal employees shall be nonrepresented.

This annual certification procedure neither "limits what [public employees] may say nor requires them to say anything." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006). Nor does the law "force one speaker to host or accommodate another speaker's message." *Id.* at 63. Thus, even if Plaintiffs could somehow escape the holding of *Laborers Local 236*, they fail to state a claim under long-standing compelled-speech doctrine.

"[F]reedom of speech prohibits the government from telling people what they must say." *Rumsfeld*, 547 U.S. at 61. Two famous examples are *West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943), and *Wooley v. Maryland*, 430 U.S. 705 (1977). In those cases, the Court held unconstitutional a law requiring children to recite the Pledge of Allegiance and salute the flag,

and a law requiring motorists to display the New Hampshire state motto—"Live Free or Die"—on their license plates. *Barnette*, 319 U.S. at 642; *Wooley*, 430 U.S. at 717.

The First Amendment can also be violated by the government requiring a speaker to accommodate or subsidize another speaker's message. For example, in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 505 U.S. 557 (1995), the Court struck down a law requiring a St. Patrick's Day parade to include a group whose message the parade's organizer did not wish to support. *Id.* at 566. Regarding subsidies of speech, in *United States v. United Foods, Inc.*, 533 U.S. 405 (2001), the Court struck down a law requiring fresh-mushroom handlers to pay assessments used to subsidize advertisements promoting mushroom sales. *Id.* at 416.

Wisconsin Stat. § 111.70(4)(d)3.b. does not "tell[] people what they must say." *Rumsfeld*, 547 U.S. at 61. Under the statute, public employees are free to vote or not vote in an annual bargaining-unit certification election. There is no government-mandated penalty against the employee for not casting a ballot. *See Barnette*, 319 U.S. at 642; *Wooley*, 430 U.S. at 717. Likewise, Wis. Stat. § 111.70(4)(d)3.b. does not force public employees to accommodate or subsidize another person's or entity's message. *See Hurley*, 505 U.S. at 566; *United Foods*, 533 U.S. at 416. Under long-standing compelled-speech doctrine, there is no First Amendment violation.

Plaintiffs rely upon *Janus*, which involved compelled speech and public-sector unions. *See* 138 S. Ct. at 2486. That is where the similarities end. The decision does not aid Plaintiffs, as they are not asserting that Wis. Stat. § 111.70(4)(d)3.b. creates a speech *subsidy*.

Relying on *Janus*, Plaintiffs' quarrel with Act 10's annual-certification requirement is that it "infringes on the rights of the public employees to not *engage in speech*." (Dkt. 1:5 ¶ 20 (emphasis added).) They argue it "violates the First Amendment rights of public employee non-voters to remain silent in the re-certification process." (Dkt. 1:5 ¶ 22.) However, *Janus* addressed something different: it is an example of speakers being required to *subsidize* speech with which they disagreed. Under the Illinois law struck down in *Janus*, "public employees [were] forced to subsidize a union, even if they [chose] not to join and strongly object[ed] to the positions the union [took] in collective bargaining and related activities." 138 S. Ct. at 2469–60. Unlike in *Janus*, Plaintiffs here are not asserting that Wis. Stat. § 111.70(4)(d)3.b. forces them to *subsidize* speech they disfavor. *Janus* is inapplicable.

Accordingly, Count I does not state a claim upon which relief can be granted. The Court should dismiss it under Rule 12(b)(6).

## CONCLUSION

The Court should grant Defendant Daley's motion to dismiss Plaintiffs' Complaint.

Dated this 26th day of September, 2019.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendant James J. Daley

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (Kilpatrick)
(608) 266-8549 (Kawski)
(608) 267-2223 (Fax)
kilpatricksc@doj.state.wi.us
kawskicp@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on September 26, 2019, I electronically filed the foregoing Defendant's Memorandum of Law In Support of His Motion to Dismiss with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 26th day of September, 2019.

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General