# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 139, AFL-CIO, KAREN ERICKSON, and HEATH HANRAHAN<br><br>Plaintiffs,<br><br>v.<br><br>JAMES J. DALEY *in his official capacity as Chairman of the Wisconsin Employment Relations Commission*,<br><br>Defendant,<br><br>and<br><br>WISCONSIN LEGISLATURE and KRISTI KOSCHKEE,<br><br>Movants. | Case No. 19-CV-1233-JPS<br><br>**ORDER** |

On August 26, 2019, Plaintiffs in the above-captioned case filed a complaint pursuant to 42 U.S.C. § 1983 alleging that Wisconsin Statutes section 111.70 *et seq*, which embodies a "budget repair bill" known as "Act 10," violates their rights under the First and Fourteenth Amendments. Plaintiffs consist of Local 139, a union of operating engineers, as well as two individual members of Local 139 who are employed by Marinette County, Wisconsin. Defendant, chairman of the Wisconsin Employment Relations Commission ("WERC"), moved to dismiss the complaint. (Docket #9). Shortly thereafter, the Wisconsin Legislature and Kristi Koschkee, a public-school teacher, filed motions to intervene. (Docket #13, #18). As the Court

will explain below, the Court will dismiss Count Two without prejudice and Count Three with prejudice. The Court also has concerns about Plaintiffs' standing as to Count One. Within twenty-one days of the date of this Order, Plaintiffs must file a brief supporting their standing to bring Count One. The Court will address the motions to intervene after it is satisfied that it has jurisdiction over the remaining claim.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

Page 2 of 13
Case 2:19-cv-01233-JPS   Filed 03/03/20   Page 2 of 13   Document 38

## 2. RELEVANT ALLEGATIONS

In 2011, the Wisconsin Legislature enacted Act 10, which amended an earlier statute that governed collective bargaining between municipal employers and union representatives. Act 10 made three changes which are at issue today.

First, Act 10 requires annual recertification elections for union representatives, and effectively provides that non-votes will be counted as votes against union representation—rather than simply not being counted. The relevant section states,

> [a]nnually, the commission shall conduct an election to certify the representative of the collective bargaining unit that contains a general municipal employee. . .the commission shall certify any representative that receives at least 51 percent of the votes of all the general municipal employees in the collective bargaining unit. **If no representative receives at least 51 percent of the votes of all of the general municipal employees** in the collective bargaining unit, at the expiration of the collective bargaining agreement, **the commission shall decertify the current representative and the general municipal employees shall be nonrepresented**.

Wis. Stat. § 111.70(4)(d)3b (emphasis added). In a recent election, this prevented Local 139 from being recertified even though 100% of the votes cast were in favor of recertification. This is because a majority of employees did not vote, and their votes were counted as "no" votes. Plaintiffs allege that this violates their First Amendment rights by compelling them to vote "no" against their wish not to vote at all.

Second, Act 10 has been interpreted to preclude agreements between the union and municipal representatives over anything except wages. The relevant section states that,

> The municipal employer is prohibited from bargaining collectively with a collective bargaining unit containing a general municipal employee with respect to any of the following: [] Any factor or condition of employment except wages, which includes only total base wages and excludes any other compensation, which includes, but is not limited to, overtime, premium pay, merit pay, performance pay, supplemental compensation, pay schedules, and automatic pay progressions.

Wis. Stat. § 111.70(4)(mb)1. This provision prohibits municipal employers from collectively bargaining about anything other than wages; however, it does not prohibit informal discussions between municipal employers and unions outside of the context of the collective bargaining process. Plaintiffs allege that Defendant has unlawfully interpreted this provision to prohibit municipal employers from negotiating anything with unions, even outside of the collective bargaining process. So, for example, a union could not offer health benefit coverage, work training, or temporary employees to a municipal employer who sought these benefits outside of the collective bargaining process. Plaintiffs allege that this constitutes an arbitrary restriction on the union's ability to negotiate or contract with municipal employers on matters of public concern, in violation of the First and Fourteenth Amendments.

Third, Act 10 imposes a blanket prohibition on voluntary dues deductions. The relevant section states that "[a] municipal employer may not deduct labor organization dues from the earnings of a general

municipal employee or supervisor." Wis. Stat. § 111.70(3g). This provision prevents employees from voluntarily choosing to support the union through wage deductions. Plaintiffs allege that this constitutes an unlawful content-based restriction on public employees, in violation of the First Amendment, as well as a violation of Plaintiffs' equal protection rights.

3. ANALYSIS

   3.1 Count One – Compelled Speech

   3.1.1 Act 10 Background

Act 10's recertification provision has been the subject of considerable litigation, but never under the theory that it constitutes forced speech. *Wisconsin Educ. Ass'n Counsel v. Walker*, 705 F.3d 640 (7th Cir. 2013) ("*WEAC*") addressed First Amendment challenges to the payroll deduction prohibition, *id.* at 645–53, but did not address any First Amendment implications of the recertification requirement. In *WEAC*, the parties also agreed that various provisions in Act 10, including the recertification requirement, were subject to rational basis review because they did not affect a fundamental right. *Id.* at 653.[1] The *WEAC* court determined that the recertification requirement did not run afoul of the Equal Protection Clause because there was a rational reason to apply the requirement to general employee unions but not public safety unions. *Id.* at 656–57.

In *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628 (7th Cir. 2014), the Seventh Circuit considered whether the cumulative effect of Act 10's restrictive provisions—including the recertification requirement—violated the First Amendment's association clause. The Seventh Circuit determined

---

[1] By contrast, here, Plaintiffs contend that a specific provision—the recertification requirement—implicates their right to freedom of speech.

that they did not: "nothing in Act 10 prohibits unions from forming, meeting, or organizing." *Id.* at 638. While Act 10's cumulative provisions made it more difficult for unions to represent their members' interests, this did not amount to a constitutional issue: "the First Amendment does not require the state to maintain policies that allow certain associations to thrive." *Id.* at 639. The *Laborers Local* court did not consider whether the recertification requirements constitute compelled speech.

Though state court interpretations of constitutional law are not binding on federal courts, sometimes they are instructive. In *Madison Teachers, Inc. v. Walker*, 851 N.W.2d 337 (Wis. 2014), the Wisconsin Supreme Court also determined that the cumulative burden of Act 10's provisions— including the recertification requirement—did not violate the unions' right to associate. The court explained that the recertification provisions did not "bar or obstruct general employees from joining other like-minded individuals to associate for the purpose of expressing commonly held views." *Id.* at 361 (citation omitted). *Madison Teachers* also did not address whether the recertification requirement constituted compelled speech.

### 3.1.2 Compelled Speech Under *Janus*

In *Janus v. AFSCME*, 138 S. Ct. 2448 (2019) the Supreme Court signaled a change in tide of union litigation by overturning *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1973). Under *Janus*, it is now a violation of the First Amendment for states to require non-union members to pay dues to cover union activities, because such a requirement constitutes compelled speech. The Supreme Court reiterated the principles of free speech that undergirded its reasoning: "freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.'" *Id.* at 2463 (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). It explained that

"[c]ompelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id.*

In light of these invigorating pronouncements, Plaintiffs ask the Court to consider whether Act 10 unconstitutionally compels speech by counting non-votes for a union representative as no-votes. Plaintiffs submit that by construing non-votes as "no" votes, the government compels individuals who wish to remain neutral to vote "no." Instead of a non-vote signifying a lack of opinion, a desire *not* to weigh in, or an acquiescence "to the will of those who did vote," the government has decided for those non-voters that they are voting *against* something. (Docket #26 at 6). Defendant argues that *Laborers Local* and *WEAC* preclude this claim, but neither of those cases dealt with the issue presented here, i.e., whether the Act 10 provision requiring 51% of the union to vote yes results in compelled speech.

However, before the Court can address the substance of the parties' arguments, it must satisfy itself that it has jurisdiction to do so. Plaintiffs cannot invoke federal jurisdiction unless they can show a "personal stake in the outcome of the controversy," i.e., standing. *Baker v. Carr*, 369 U.S. 186, 204 (1962). Plaintiffs have not alleged sufficient facts in their complaint to establish that they have Article III standing. Article III standing requires Plaintiffs to have "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized. . .and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations and quotations omitted). For an injury

to be concrete, "it must actually exist." *Id.* Additionally, there must be "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. In other words, "the injury has to be fairly traceable to the challenged action of the defendant and not. . .the result of the independent action of some third party not before the court." *Id.* (citation and internal grammatical marks omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citations and quotations omitted).

"[A] person's right to vote is 'individual and personal in nature.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Simms*, 377 U.S. 533, 561 (1964)). "Thus 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* (quoting *Baker*, 369 U.S. at 206). Local 139 cannot vote or abstain from voting in its representative's recertification process—but its constituent members can, and do.

Therefore, in order to establish that they were compelled to speak in violation of their First Amendment rights and suffered injury therefrom, the individual plaintiffs—Heath Hanrahan and Karen Erickson—must plausibly allege that: (1) they abstained from voting in the most recent recertification process; (2) by abstaining, they intended to express something other than a "no" vote; (3) their non-votes were counted as "no" votes against their will; and (4) they were actually injured by this. *See Gill*, 138 S. Ct. at 1929–30 (holding that a plaintiff with a "generalized grievance against governmental conduct of which he or she does not approve" lacks standing) (citations and quotations omitted).

It is not clear from the complaint whether these are the facts of the case. In the request for injunctive relief, the complaint simply states that this

Page 8 of 13
Case 2:19-cv-01233-JPS   Filed 03/03/20   Page 8 of 13   Document 38

provision "compels municipal employees to speak by either forcing them to vote in a recertification election or by deeming their silence to be speech." (Docket #1 at 6). Therefore, in order to assure the Court that it has jurisdiction over this claim, Plaintiffs are ordered to file a brief on the issue of standing as to Count One within 21 days of the date of this Order. Otherwise, the claim will be dismissed without prejudice.

### 3.2 Count Two – Restrictions on Non-Collective Bargaining

Plaintiffs also contend that Defendant wrongfully interprets Act 10 to preclude municipal employers from bargaining or contracting with unions *outside* of the collective bargaining process in violation of Plaintiffs' First and Fourteenth Amendment rights. Plaintiffs did not address the Fourteenth Amendment argument that Defendant raised in the motion to dismiss, so that issue will be deemed waived, and this Court will not address it. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (holding that where a party fails to address a non-frivolous or dispositive argument, it is appropriate to infer acquiescence, and "acquiescence operates as a waiver."). For the reasons explained below, this claim will be dismissed without prejudice.

In *Laborers Local*, the Seventh Circuit considered a challenge to Wis. Stat. § 66.0508(1m), which provides that, except as stated under Wis. Stat. § 111.70 *et seq.*, "no local governmental unit may collectively bargain with its employees." Wis. Stat. § 111.70(4)(mb)1 prohibits municipal employers (i.e., local governmental units) from collectively bargaining with employees about anything *except* total base wages. The Seventh Circuit upheld Act 10's collective-bargaining requirements against challenges brought under the First Amendment's petition clause, explaining that "[n]othing in Wis. Stat. § 66.0508(1m), or Act 10 generally, precludes the unions or their members

from expressing their views to their municipal employer or from trying to persuade the employer to adopt a particular policy." *Laborers Local*, 749 F.3d at 636. As discussed above, the Seventh Circuit also upheld the cumulative effect of the act's provisions, including the collective-bargaining requirements, against challenges brought under the First Amendment's association clause.

Plaintiffs argue that, as interpreted and applied by Defendant, Act 10 actually *does* preclude unions or their members "from expressing their views. . .[or] trying to persuade the employer to adopt a particular policy" because Defendant does not allow employers to bargain *outside* the collective bargaining, either. *Id.* Plaintiffs allege that this prevents municipal employers from informally negotiating with unions about health coverage, work training, or temporary work employees. Defendant, in turn, counters that *Laborers Local* applies because Plaintiffs are not prevented from expressing their views—the municipalities are simply not allowed to listen. (Docket #10 at 17).

As written, Act 10 does not violate Plaintiffs' First Amendment rights because it does not prevent the union or its members from speaking. This is true even if municipal employers refuse to engage discussions with unions outside of the collective bargaining process. *See Laborers Local*, 749 F.3d at 636 (there is "no constitutional right to force the government to listen to their views.") (quoting *Minn. State Bd. for Comm. Coll. v. Knight*, 465 U.S. 271, 283 (1984)). To the extent that Plaintiffs allege that Act 10, as applied, is unconstitutional because Defendant uses it to prohibit municipal employers from listening to what the unions have to say, then the injury

would run to the municipal employers, not to the union.[2] Accordingly, this claim will be dismissed without prejudice because the Plaintiffs lack standing to bring it.

### 3.3 Count Three – Payroll Deductions

The Seventh Circuit has already upheld payroll deduction prohibitions against First and Fourteenth Amendment challenges, finding that the payroll deduction prohibition (1) constituted a viewpoint neutral withdrawal of a state subsidization of union speech; and (2) imposed a viewpoint neutral distinction between public safety and general employees. *WEAC*, 705 F.3d at 648–653. In so holding, the Seventh Circuit used the framework set forth in *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358–59 (2009), which applies to the state subsidization of speech. *Ysursa* remains good law, and Plaintiffs do not raise a new equal protection group for the Court to consider.

Instead, Plaintiffs ask the Court to consider the issue from the individual employees' perspective, rather than from the perspective of the unions—i.e., the injury to the employees that arise from not being able to use the payroll deduction. *See* (Docket #26 at 13). Plaintiffs contend that the free speech doctrines reiterated in *Janus*, as well as the money-as-speech holding in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), compel a finding that Act 10's prohibition on individual union members

---

[2]It is well-settled that the First Amendment protects the right to receive speech if one desires to receive it. "Freedom of speech presupposes a willing speaker. But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 592 (7th Cir. 2012) ("[w]hen one person has a right to speak, others hold a reciprocal right to receive the speech.") (citations omitted).

from using the payroll deduction to fund union activities amounts to an unlawful abridgment of speech.

*WEAC* makes clear that that payroll deductions amount to speech subsidies, and the government's decision to prohibit the payroll deduction amounts to a revocation of a subsidy. *WEAC*, 705 F.3d at 648–653. The *WEAC* court came to that conclusion well after *Citizens United* was decided, and with the benefit of its holding. Additionally, the Seventh Circuit engaged in an analysis of Act 10 using the framework is that set forth by *Ysursa*, which *Janus* does not disturb. The Court has no basis to reconsider the issue.

This constitutional analysis does not change if the payroll deduction issue is considered from the perspective of the individual employee rather than from that of the unions. *WEAC* was very clear that Act 10 does not prevent or preclude the employees from paying union dues or belonging to unions, nor does it discriminate between general employees and public safety employees on the basis of ideas. *WEAC*, 705 F.3d at 648. Additionally, *WEAC* explained that under a rational basis review, the legislature's decision to apply the payroll deduction prohibition only to general employee unions was reasonably related to their concern "for labor peace among the public safety employees" and the "fear that a payroll prohibition on public safety employees would trigger an illegal strike." *Id.* at 657. Accordingly, this claim must be dismissed with prejudice.

4.  **CONCLUSION**

For the reasons explained above, Defendant's motion to dismiss will be granted in part, and Count Three will be dismissed with prejudice. Plaintiffs are ordered to submit briefing on the issue of standing as to Count One no later than 21 days after the date of this Order. If Plaintiffs fail to do

so, the remainder of the complaint will be dismissed without prejudice, and the case will be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #9) be and the same is hereby **GRANTED in part** as stated in the terms of this Order;

**IT IS FURTHER ORDERED** that Plaintiffs file a brief with the Court on the issue of standing as to Count One within 21 days of the date of this Order, or the claim will be dismissed without prejudice; and

**IT IS FURTHER ORDERED** that Count Two be and the same is hereby **DISMISSED without prejudice** and Count Three be and the same is hereby **DISMISSED with prejudice**.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge